UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH JAMES RIDER,

      Plaintiff,

v.

                                                  Case No. 21-cv-12660
                                                  Honorable Linda V. Parker

STILLMAN, P.C.,

      Defendant.

_____/

**<u>OPINION AND ORDER DENYING DEFENDANT'S RENEWED MOTION TO DISMISS (ECF NO. 25)</u>**

Plaintiff Joseph James Rider ("Rider") filed this lawsuit against Defendant Stillman, P.C. ("Stillman") alleging the following claims: (Count I) violations of the Michigan Occupational Code ("MOC"), Michigan Compiled Laws § 339.901 *et seq.*; and (Counts II and III) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. (*See* ECF No. 1.) Rider's claims arise from a state-court collection lawsuit Stillman pursued against Rider, which Rider alleges lacked proof and was based on misrepresentations. The matter is presently before the Court on Stillman's second motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 25.) The motion is fully briefed. (ECF Nos. 26, 27.) For the reasons that follow, the Court is denying the motion.

1

## I. Factual and Procedural Background

### A. The Parties

Rider is a "consumer" as defined in the FDCPA. (ECF No. 1 at PageID. 6.) Stillman is a third-party debt collector and collection agency, which attempted to collect a debt Rider allegedly owed to Synchrony Bank. (*Id*. at PageID. 5, 13, 15-16.) Synchrony Bank had assigned the debt to Second Round Sub, LLC ("Second Round"). (*Id.*)

### B. State Court Lawsuit

On June 25, 2021, Stillman filed a complaint against Rider in state court, seeking a judgment of $4,949.39 plus costs for the debt Rider allegedly owed. (*See* ECF No. 1-1 at PageID. 19-21.) A process server delivered the complaint and state-court summons to Rider on July 7, 2021. (*See* ECF No. 1 at PageID. 7, 22.) Stillman disclosed the allegedly owed debt and Rider's information to the process server. (*See id*. at PageID. 10.) On July 19, Rider answered the state court complaint denying that he owed the debt and stating that he believed the debt to be "credit fraud" in his name. (ECF No. 1-1 at PageID. 26.) On September 22, at Stillman's request, Rider completed an ID Theft Affidavit, stating that he had filed a police report over the alleged identity theft on September 2, 2021. (*See id*. at PageID. 24, 28-32; ECF No. 1 at PageID. 7.)

Despite the filing of this affidavit, Stillman filed a motion for summary disposition in the state court action on September 27, 2021, demanding $5,182.41 for the debt owed, costs, and statutory attorney fees. (*See* ECF No. 1 at PageID. 8; ECF No. 1-1 at PageID. 34-43.) In the motion, Stillman acknowledged Rider's answer to the complaint denying that he owed the debt but did not mention Rider's police report or identity theft affidavit. (*See* ECF No. 1-1 at Pg ID 38.) To the contrary, Stillman argued that Rider failed to offer an affirmative defense or documentary evidence showing that he did not owe the debt. (*See id.* at PageID. 40.)

On October 18, 2021, attorney Brian Parker (Rider's current counsel) filed an appearance in the state court matter on Rider's behalf. (*See* ECF No. 1 at PageID. 9; ECF No. 1-1 at PageID. 45-48.) With Attorney Parker's assistance, Rider filed a new affidavit, signed October 16, 2021, stating that the debt was not his and that it was causing him stress and anxiety to hire an attorney to defend the lawsuit. (*See id.*) On October 20, 2021, Stillman dismissed the state court lawsuit with prejudice. (*See* ECF No. 1 at PageID. 9.)

### C.  Federal Court Lawsuit

On November 15, 2021, Rider filed the present action against Stillman, asserting that Stillman filed and maintained the state-court collection lawsuit without proof and in violation of federal and state law. (ECF No. 1.) Stillman

3

filed an Answer on December 8. (ECF No. 5.) While the Court then attempted twice to set this case for a scheduling conference (*see* ECF Nos. 7, 12), the conference dates were adjourned when Stillman subsequently filed motions to dismiss.

### *i. Stillman's Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)*

On January 3, 2022, Stillman filed a motion for judgment on the pleadings pursuant to Rule 12(c), arguing that Rider's FDCPA claims fail as a matter of law, and that the Court should decline to exercise supplemental jurisdiction over his state law claim. (ECF No. 8.)

On August 19, 2022, this Court granted in part and denied in part Stillman's motion. (ECF No. 11.) The Court held that Rider's FDCPA claim based on information communicated to the state-court process server (Count II) failed as a matter of law. (*Id.* at PageID. 201-04.) The Court further held, however, that Rider plausibly alleged that Stillman threatened to pursue action that could not legally be taken and using false representation or deceptive means, in violation of the FDCPA (Count III). (*Id.* at PageID. 205-10.) As the Court concluded that at least one of Rider's federal claims survived, it accepted supplemental jurisdiction over his state law claim (Count I). (*Id.* at PageID. 210.)

*ii. Stillman's Motion to Dismiss*
*Pursuant to Federal Rule of Civil Procedure 12(b)(1)*

On September 9, 2022, Stillman filed a second motion to dismiss, this time pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction on the ground that Rider lacked Article III standing because he "did not allege that he suffered any actual injury." (ECF No. 13 at PageID. 213.)  Stillman argued that Rider made only vague allegations of financial loss "without alleging that he actually made a payment or suffered any financial loss as a result of the underlying [state court] motion" and claimed to have otherwise suffered only "great stress and anxiety." (*Id.* at PageID. 219-220.)

On May 10, 2023, this Court denied Stillman's motion. (ECF No. 19.)  The Court concluded that neither "reputational harm" nor "stress and anxiety" could demonstrate the injury to establish Article III standing for a violation of the FDCPA.  (*See id*. at PageID. 253-55.)  However, the Court found that Rider alleged sufficient facts to show that he suffered financial loss as a result of Stillman's alleged FDCPA violations to demonstrate his standing.  (*Id.* at PageID. 256-57.)  Specifically, the Court relied on Rider's allegation in his Complaint and his statement in an affidavit attached to the Complaint, that he incurred financial costs because he had to hire an attorney to represent him in the state-court action. (*Id*. at PageID. 256 (citing ECF No. 1 at PageID. 9, ¶ 35); *see also* ECF No. 1-1 at

PageID. 48, ¶ 9.)  The Court found it irrelevant that Rider did not specifically state that he actually made a payment to counsel.  (*Id.*)

 iii.  *Scheduling Order, Stillman's Discovery Requests, and Rider's Responses*

The Court conducted a scheduling conference in this matter on May 10, 2023.  Following the conference, a Scheduling Order was issued setting a discovery deadline of September 7, 2023, and a dispositive motion cut-off date of October 5, 2023.  (ECF No. 22.)  On or about July 19, 2023, Stillman served discovery requests on Rider.  (*See* ECF No. 25-1.)

On August 16, 2023, Rider responded.  (ECF No. 25-1 at PageID. 279.)  In response to an interrogatory seeking the date and amount Rider paid to retain Attorney Parker in the state-court action, Rider answered:  "I don't remember at this time.  It's not relevant to Stillman not helping me and continuing to sue me on a debt that was not mine as I showed Stillman."  (ECF No. 25-2 at PageID. 286.)  When asked to produce all documented evidence of the payments identified in response to that interrogatory, Rider responded, in part:  "I do not have anything as it has been almost two years."  (*Id.*)

 iv.  *Stillman's Renewed Motion to Dismiss Pursuant to Rule 12(b)(1)*

On September 5, 2023, Stillman filed the pending renewed Rule 12(b)(1) motion, arguing that Rider lacks an actual injury to support Article III standing.  (ECF No. 25.)  Stillman asserts that Rider "false[ly] allege[ed] in his Complaint

6

that he actually paid his attorney to defend [him in the] underlying collection case" and "[doubl[ed] down on that false claim" when responding to Stillman's prior motion. (*Id.* at PageID. 272.) According to Stillman, "Rider has now admitted that he lied" with respect to this financial loss. (*Id.*) Stillman relies on Rider's discovery responses to "demonstrate" that his previous assertions were false.

In response to Stillman's motion, Rider disputes the accusation that "he lied," pointing out that he previously simply did not recall the details of his payment(s) to Attorney Parker and was unaware of or did not possess documentation reflecting any payment. (ECF No. 26 at PageID. 292-93.) Rider contends that there, in fact, is no evidence that he is being untruthful. (*Id.* at PageID. 296-97.)

To further support his claim of financial loss, Rider provides a second affidavit, in which he states:

> Facing the further insult that Stillman law firm is now calling me a liar after all they have put me through[,] forced me into going through my old records with Mr. Parker's help[.] I discovered I paid the attorney two monthly payments and Mr. Parker had given me a discount to help me hire him and fight the summary motion against me. . . .

(ECF No. 26-1 at PageID. 309, ¶ 6.) Rider goes on to indicate that he paid Attorney Parker $775 through a credit card link with a vendor used by Attorney Parker. (*Id.* ¶ 7.) Rider asserts that he was being truthful when he answered Stillman's interrogatories as, at the time, he did not remember what he had paid

7

Attorney Parker. (*Id.* at PageID. 310, ¶ 12.) He explains that Attorney Parker subsequently found two receipts from the vendor for the payments, although Rider did not see or obtain those receipts. (*Id.* ¶ 13.)

In reply, Stillman maintains that it "is just plain odd" that Rider did not attach the alleged receipts to his response or produce them in discovery, and Stillman contends that "in an effort to dig out from the hole created by his first set of lies, [Rider] is simply digging himself deeper." (ECF No. 27 at PageID. 336.) Stillman argues that evidence concerning what Attorney Parker found and shared with Rider is inadmissible hearsay, which cannot be used to create a genuine issue of material fact. (*Id.* at PageID. 336-37.) Stillman further argues that Rider's second affidavit constitutes a "sham affidavit" and, therefore, may not be considered in deciding the motion to dismiss. (*Id.* at PageID. 337.)

## II. Standard of Review

As the Court set forth in its decision denying Stillman's previous Rule 12(b)(1) motion, "[m]otions to dismiss for lack of jurisdiction generally come in two varieties: a facial or factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Stillman raises a factual attack.

While a facial attack questions the sufficiency of the pleading itself and the court must accept the allegations as true, "no presumptive truthfulness applies to

8

the allegations" when a factual attack—or "speaking motion"—is made. *Id.* (citation omitted). If a factual controversy is raised, the court must "weigh the conflicting evidence to arrive at the factual predicate that the subject matter does or does not exist." *Id.* "[T]he district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id.* "When a defendant has produced evidence challenging the factual existence of [subject matter jurisdiction], a plaintiff must generally prove [subject matter jurisdiction] with evidence, even at the motion-to-dismiss stage." *Harris v. Lexington-Fayette Urban Cnty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (citing *Taylor v. KeyCorp.*, 680 F.3d 609, 613 (6th Cir. 2012); *Superior MRI Servs., Inc. v. All Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)).

### III.  ADMISSIBILITY OF EVIDENCE

The Court first exams whether it may consider some of Rider's evidence when deciding Stillman's motion to dismiss.

### A.  Sham Affidavit Doctrine

Stillman argues that Rider's second affidavit, submitted in response to the pending motion, is a "sham affidavit" because it purportedly contradicts Rider's signed discovery responses in which Rider stated that he does not remember whether he paid his attorney, and that he does not have documentation of any such payment.

9

The sham affidavit doctrine precludes a party from filing an affidavit contradicting earlier sworn testimony. *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). "If the affidavit directly contradicts prior sworn testimony," it should be stricken unless the proponent "provides a persuasive justification for the contradiction." *Id.* (quoting *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906 (6th Cir. 2006)). "If the affidavit does not directly contradict prior sworn testimony, it should not be stricken unless the court determines that it is in tension with the prior testimony and an attempt to create a sham issue of fact for trial." *Werner v. Young*, No. 22-5197, 2023 WL 639103, at *7 (6th Cir. Jan. 27, 2023) (citing *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 842 (6th Cir. 2021)). The Sixth Circuit has provided a "nonexhaustive list of factors" as a "useful starting point" to decide whether a non-contradictory affidavit is being used to create a sham issue of fact for trial: "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion that the affidavit attempts to explain." *Aerel*, 448 F.3d at 909 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)) (brackets omitted).

Rider's statements in his second affidavit do not directly contradict his answers to Stillman's interrogatories or requests to produce documents. Contrary to Stillman's repeated assertion (*see* ECF No. 25 at PageID. 276; ECF No. 27 at PageID. 338), Rider did not state in his discovery responses that he did not remember whether he actually paid Attorney Parker. Instead, Rider indicated "based only upon information that is presently available to and specifically known" (*see* ECF No. 25-2 at PageID. 283), that he simply could not remember *the date and amount* he paid Attorney Parker, and that *he* does not have any documents evidencing any payments (*id.* at PageID. 286). His affidavit explains that he has since obtained information indicating what payments were made, as a result of searching his old records and Attorney Parker locating two receipts from his LawPay link vendor for the payments.

Neither Rider nor Attorney Parker have explained why the vendor receipts were not located prior to Rider responding to Stillman's discovery or in response to those requests. Nor have they explained why Rider's discovery responses have not been supplemented with the receipts—assuming they in fact have not.[1] The Court nevertheless cannot conclude, as Stillman does, that Rider has been untruthful. The Court also cannot conclude that Rider's second affidavit is an attempt to create

---

[1] The Court is unsure. Stillman certainly has not filed a motion to compel.

11

a sham fact issue. Therefore, the Court is considering Rider's second affidavit when assessing whether he has Article III standing to assert his claims.

## B. Hearsay

Stillman argues that Rider's statements concerning the LawPay link receipts which Attorney Parker found, but which Rider did not obtain and had not seen when he completed his second affidavit, is inadmissible hearsay which cannot create an issue of fact with respect to Rider's claimed injury.

Although a Rule 12(b)(1) motion is not converted into a Rule 56 motion when matters outside the pleading are presented, *see* Fed. R. Civ. P. 12(d), "Rule 56 is relevant to the jurisdictional challenge in that the body of decisions under Rule 56 offers guidelines in considering evidence submitted outside the pleadings." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (citing *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130-31 (2d Cir. 1976)). "Rule 56(e) 'requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.'" *Bluegrass Dutch Tr. Morehead, LLC v. Rowan Cnty. Fiscal Ct.*, 734 F. App'x 322, 327 (6th Cir. 2018) (quoting *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (citing Fed. R. Civ. P. 56(e)). "[H]earsay evidence generally cannot be considered on a motion for summary judgment." *Id.* (citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d

126, 133 (6th Cir. 1969)); *see also Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 515-16 (6th Cir. 2022).

Rider's second affidavit reflects that he has no personal knowledge of the LawPay link receipts and is relying only on Attorney Parker's statements of their existence. The statements, therefore, are not based on Rider's personal knowledge and constitute hearsay. Accordingly, the Court concludes that it cannot consider these statements for purposes of deciding whether Rider has standing.

These statements are different, however, from those in Rider's second affidavit that he "had to find the money to hire an attorney [to defend him in the state court action] and suffer the costs[,]" and that after "going through [his] old records with Mr. Parker's help . . . discovered . . . two monthly payments [to Attorney Parker . . . ." (ECF No. 26-1 at PageID. 309, ¶¶ 4, 6.) Rider's assertion that he paid Attorney Parker $775 also appears to be based on personal knowledge—apparently refreshed since he completed his interrogatories (perhaps

13

by his old records, the receipts found by Attorney Parker, or both)—and is not hearsay.[2] These statements, therefore, will be considered.[3]

### IV. Applicable Law on Standing and Analysis

Three elements are required to establish standing under Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff must allege facts showing that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). The "plaintiff bears the burden of establishing the elements of standing" by " 'clearly alleg[ing] facts demonstrating' each element." *Ward v. Nat'l Patient Acct. Servs. Solutions, Inc.*, 9 F.4th 357, 360 (6th Cir. 2021) (quoting *Spokeo*, 578 U.S. at 338).

---

[2] Any materials, including hearsay, may be used to refresh a witness's recollection regarding a matter of which the witness once had personal knowledge. *See Weir v. C.I.R.*, 283 F.2d 675, 678 (6th Cir. 1960) ("It is not the memorandum which is the evidence, but the testimony as to the personal recollection of the witness; and a witness may refresh his recollection by looking at any document, whether made by himself or by others, and, in the same way, his memory may be refreshed by conversations with others. None of the foregoing instances would be subject to objection as being in violation of the best evidence rule, or the hearsay rule."); *See also* Fed. R. Evid. 803(5); 88 Am. Jur. Proof of Facts 3d 395 (2006).

[3] As discussed *infra*, even without this last statement identifying the exact amount Rider paid Attorney Parker, the Court finds sufficient evidence to establish Rider's standing.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). To be "particularized," the injury must impact "the plaintiff in a personal and individual way." *Id.* (quotation marks and citations omitted). A "concrete" injury is one that actually exists. *Id*. at 340.

"The Supreme Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Ward*, 9 F.4th at 361 (quoting *Spokeo*, 578 U.S. at 341). "At the same time, the Court recognized that 'the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute' concrete harm, even without asserting 'any additional harm.'" *Id*. (quoting *Spokeo*, 578 U.S. at 342). "What makes a harm concrete for purposes of Article III[,]" the Supreme Court has explained, is whether it has a "close relationship" to a harm "traditionally" recognized as a basis for a lawsuit in English or American courts. *Spokeo*, 578 U.S. at 341; *TransUnion*, 594 U.S. at 424 (citations omitted). "A common-law or historical analogue need not be an 'exact duplicate' to make this showing." *Ward*, 9 F.4th at 362 (quoting *TransUnion*, 594 U.S. at 424).

15

"[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms." *TransUnion*, 594 U.S. at 425. "Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* (citing *Spokeo*, 578 U.S. at 340-41). Examples provided include "reputational harms, disclosure of private information, . . . intrusion upon seclusion[,]" and "harms specified by the Constitution itself[,]" such as free speech protections. *Id.* (citations omitted). "Congress's decision to impose a statutory prohibition or obligation on a defendant" "may be instructive" when deciding "whether a harm is sufficiently concrete to qualify as an injury in fact[.]" *Id.* Nevertheless, it is not determinative. *Id.* (quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)) (explaining that "even though 'Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is'"). The plaintiff's harm still must be one "traditionally recognized as providing a basis for a lawsuit in American courts." *Id*. at 427.

In Count III of his Complaint, Rider alleges that Stillman violated Sections 1692e(5) and (10) of the FDCPA by threatening legal action to collect a debt

16

through false representations or deceptive means.  (*See* ECF No. 1 at PageID. 14-15.)  The parties have not addressed whether this violation has a "close relationship" to a harm "traditionally" recognized in our jurisprudence.  It seems to this Court that it bears close resemblance to the tort of fraudulent misrepresentation, which "predates the Founding and was widely recognized . . . in the United States in the 19th century." *Church v. Collection Bureau of Hudson Valley, Inc.*, -- F. Supp. 3d --, 2023 WL 8185669, at *10 (D.N.J. 2023) (citing *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 148 (3d Cir. 2023)); *Huber*, 84 F.4th at 148 (recognizing fraudulent  misrepresentation as a traditionally recognized harm when the misrepresentation leads to "physical, monetary, or cognizable intangible harm").  But the Court finds it unnecessary to decide this issue because it concludes that Rider's evidence adequately supports that he suffered monetary harm as a result of Stillman's alleged violations of the FDCPA, even if he previously could not provide the exact date and amount he paid Attorney Parker.

Specifically, Rider provides in sworn affidavits that he hired and paid an attorney to represent him in the state-court collection action after Stillman moved for summary disposition on the false premise that Rider had not disputed the debt even though he had expressly attested that it resulted from identity theft.  Rider also asserts that, after conducting a search with the help of Attorney Parker, he was

17

able to determine that he paid $775. Stillman has presented no evidence to raise a factual controversy with respect to this asserted injury.

The Court, therefore, concludes that Rider demonstrates his standing to sue.

### IV. Federal Rule of Civil Procedure 1 and the District's Civility Principles

A word of caution as this case proceeds. On February 5, 1996, this District adopted Civility Principles. *See* http://www.mied.uscourts.gov/PDFFIles/08-AO-009.pdf. Among those civility principles is a lawyer's commitment, "even when called upon by a client to do so," to not "abuse or indulge in offensive conduct directed to other counsel, parties, or witnesses" and to "abstain from disparaging personal remarks or acrimony towards other counsel, parties, or witnesses." *Id.* at Page 4 ¶ 2. "[A]bsent good cause," an attorney also must not "attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety." *Id.* ¶ 4. Further Rule 1 of the Federal Rules of Civil Procedure instructs that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

Filing three motions to dismiss, including repeated Rule 12(b)(1) motions, has not furthered the just, speedy, or inexpensive determination of this action. Instead, it has stalled this matter quickly approaching its three-year mark. Defense counsel's strongly worded accusations in the briefs related to the current motion

risk violating the civility principles. The Court refers to counsel's assertions that Rider "lied" in previous court filings—when he, in fact, simply said subsequently that he was unable to identify the date and amount paid to Attorney Parker to support the allegation in his Complaint that he had been forced to spend money to hire an attorney. The Court further points to the reply brief, where counsel pronounces that Rider has engaged in further lies to dig himself out of the first set of lies he purportedly made. Without explicitly saying so, counsel also seems to be suggesting that the asserted payment receipts are manufactured, which is a serious charge to make against Rider and brother counsel. As Rider states, these are "heavy mischaracterization[s] and judgment[s] of another unless there is concrete justification to cast such a wrongful judgment" and "the false accusation is nothing to premise a [m]otion to [d]ismiss upon." (ECF No. 26 at PageID. 290.)

  Counsel for Stillman should assess whether this case warrants the aggressive defense it has mounted. Federal Rule of Civil Procedure 1 and the Civility Principles dictate that counsel should not employ a sledgehammer to crack a nut. And it bears remembering that there is a well-established preference for deciding cases on their merits where possible. *Burkeen v. A.R.E. Accessories, LLC*, 758 F. App'x 412, 416 (6th Cir. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

  Accordingly,

**IT IS ORDERED** that Stillman's Renewed Motion to Dismiss pursuant to Rule 12(b)(1) (ECF No. 25) is **DENIED**.

                                                    s/ Linda V. Parker
                                                    LINDA V. PARKER
                                                    U.S. DISTRICT JUDGE

Dated: July 22, 2024